United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 96-2430

Jerry J. Kerr,                               *
                                             *
        Plaintiff - Appellant,      *
                                             *
    v.                                     *
                                             *
Federal Emergency Management                 *  Appeal from the United States
Agency,                                      *  District Court for the
                                             *  Western District of Missouri
        Defendants,                  *
                                             *
Bellmon Adjustors, Inc.,                     *
                                             *
        Defendants - Appellees.      *
                         _____

Submitted: December 12, 1996
Filed: May 15, 1997
_____

Before FAGG, FLOYD R. GIBSON, and LOKEN, Circuit Judges.
_____

FLOYD R. GIBSON, Circuit Judge.

    Appellant Jerry J. Kerr insured his property against flood loss through the Federal Emergency Management Agency ("FEMA"). On May 7, 1993, Kerr's property, located in Belton, Missouri, suffered flood damage. Kerr notified FEMA of the loss, and FEMA assigned Bellmon Adjustors, Inc. ("Bellmon") to adjust Kerr's claim. When FEMA denied Kerr's claim, Kerr sued Bellmon under a negligence theory

and asserted that Bellmon undertook an independent duty to sufficiently adjust Kerr's claim and subsequently breached that duty when it failed to provide FEMA with the information necessary to process his claim.[1] The district court [2] dismissed Kerr's cause of action against Bellmon. Kerr appeals, and we affirm.

## I. BACKGROUND

Before expounding upon the facts of this case, we must determine whether we are reviewing the grant of a motion to dismiss or for summary judgment. In its Order dismissing the case, the district court stated that because it considered matters beyond the pleadings, it evaluated Bellmon's motion as one for summary judgment as required by Fed. R. Civ. P. 12(c). However, the court concluded its Order by stating it would grant Bellmon's motion to dismiss and therefore deny as moot Bellmon's motion for summary judgment. Kerr contends that the district court's inconsistency resulted in error. Admittedly, the district court's inconsistent posture on the nature of the dismissal created a somewhat confusing Order. However, if the district court failed to view Bellmon's motion as one for summary judgment as required by Rule 12(c), any error in doing so was harmless. See Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992) ("A failure of this type is harmless if the nonmoving party had an adequate opportunity to respond to the motion and material facts were neither disputed nor missing from the record."). Because the district court considered matters beyond the pleadings, we

---

[1]Kerr also brought a breach of contract claim against FEMA, which the district court dismissed. Kerr initially appealed that decision but has since dropped his appeal against FEMA. Neither of the parties has contested jurisdiction over the remaining claim against Bellmon. We note, however, that it was properly within the district court's discretion to retain jurisdiction over Kerr's negligence claim against Bellmon. See 28 U.S.C. § 1367(c)(3) (1994); Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc., 35 F.3d 1226, 1242 (8th Cir. 1994).

[2]The HONORABLE DEAN WHIPPLE, United States District Judge for the Western District of Missouri.

review the case under the summary judgment standard, see id., and accordingly view the facts in the light most favorable to Kerr. See Buck v. FDIC, 75 F.3d 1285, 1289 (8th Cir. 1996).

On May 7, 1993, a flood caused damage to Kerr's Belton property. Kerr promptly notified FEMA, and FEMA assigned Bellmon to adjust the claim. On May 23, 1993, Jim Nemecheck, a Bellmon agent, toured Kerr's property to observe the flood damage. Nemecheck advised Kerr to sign a blank proof of loss form. He informed Kerr that he would complete the form and file it with FEMA on Kerr's behalf. At the time of Nemecheck's visit, Kerr had not completed a list of lost or damaged property, but on May 28, 1993, Kerr mailed a list of such property to Nemecheck. Through repeated letters and phone calls, Kerr attempted to follow-up on Nemecheck's progress in advancing his claim. Nemecheck did not respond to Kerr's attempted correspondence. Around September 1, 1993, FEMA sent Kerr a letter informing him that it was attempting to process claims as quickly as possible.

The FEMA dwelling policy Kerr was insured under required the following: "Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy and signed sworn to by you." Bellmon App. at 27 (emphasis added). The policy further provides:

> The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you to complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

Id. (emphasis added). On November 3, 1993, FEMA denied Kerr's claim stating that "[t]he adjuster's investigation revealed that he was unable to confirm the damages related to the flood." J.A. at 98. FEMA asserted that Kerr had violated several

provisions of his insurance policy and had not filed the information required to process his claim within the sixty-day time period.

In his Complaint, Kerr alleged that Bellmon breached its duty to him when it failed to accurately investigate his claim. The district court determined that Bellmon did not owe an independent tort duty to Kerr and therefore could not be held liable for any economic loss suffered by Kerr. Because we agree that Bellmon did not owe a duty to Kerr, we affirm the district court's decision.

## II.    DISCUSSION

We review a grant of summary judgment <u>de novo</u>. <u>See</u> <u>Buck</u>, 75 F.3d at 1289. We will uphold a district court's grant of summary judgment when the facts, viewed in the light most favorable to the nonmoving party, <u>see</u> <u>id.</u>, establish "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," <u>First S. Ins. Co. v. Jim Lynch Enter., Inc.</u>, 932 F.2d 717, 718 (8th Cir. 1991)(quotation omitted).

In his Complaint Kerr alleged that "Bellmon negligently failed in its duty to [Kerr] to accurately investigate and determine if [Kerr's] loss was covered by the policy." J.A. at 5. To establish a claim of general negligence under Missouri law, Kerr is required to show that (1) Bellmon owed a duty to Kerr; (2) Bellmon breached its duty to Kerr by act or omission; and (3) as a result of the breach, Kerr suffered injury or damage. <u>See</u> <u>American Mortgage Inv. Co. v. Hardin-Stockton Corp.</u>, 671 S.W.2d 283, 292-93 (Mo. Ct. App. 1984).

Kerr agrees with the general rule of Missouri law that an insurer's agent is not liable for economic loss suffered by an insured when the agent fails to perform a duty owed to the insurer. <u>See</u> <u>State ex rel. Ranni Assocs., Inc. v. Hartenbach</u>, 742 S.W.2d 134, 139-40 (Mo. 1987). However, Kerr asserts that Bellmon's conduct falls within an

exception to this rule because an agent is liable to the insured "if he commits [an act] which would constitute an independent tort." Id. at 139. Kerr contends that a contractual duty arose between him and Bellmon when Nemecheck agreed to complete Kerr's proof of loss form and file it with FEMA. Kerr claims that because Bellmon breached the duty to perform the alleged agreement with "skill, care, and reasonable expedience and faithfulness," American Mortgage, 671 S.W.2d at 293, Bellmon has committed an independent tort against Kerr for which it should be held liable.[3] Kerr asserts that the following facts establish that Bellmon undertook a separate duty to Kerr:

1. A May 18, 1993, letter from FEMA advised Kerr that Bellmon was his assigned adjuster and "may help [him] present [his] claim." J.A. at 71 (emphasis added).

2. Nemecheck represented to Kerr that he would file the required information with FEMA as soon as Kerr provided it. As of May 28, 1993, Kerr had provided Nemecheck with a proof of loss form itemizing his damage and other information regarding his loss.

3. FEMA sent Kerr a subsequent form letter around September 1, 1993, which stated that "[f]or those of you who are awaiting finalization of your claim by the assigned adjuster, we have requested all adjusters to do whatever is necessary to properly conclude the losses." J.A. at 72.

4. A FEMA representative advised Kerr that he could only obtain a proof of loss form from an adjuster, only adjusters were authorized

---

[3]Kerr also contends that Bellmon's conduct "arguably constitutes misrepresentation, an additional independent tort." Kerr's Br. at 16. Not only has Kerr raised this argument for the first time on appeal, but he has also neglected to support this allegation with any specific law or facts from the record. Therefore, we consider the argument waived and need not address it on appeal. See Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1212 (8th Cir. 1993).

to file proof of loss forms with FEMA, and that FEMA did not strictly enforce the requirement that an insured file his claim within sixty days of the loss.

At the outset, we note that Kerr claims the letter received from FEMA on September 1 caused him to believe that Bellmon would complete his claim. He further contends that the FEMA representative induced him to rely on Bellmon to file his claim because she informed him that this was the proper and only acceptable procedure. We seriously doubt, however, that FEMA's representations could create an "independent" tort duty on the part of Bellmon. Rather, these representations relate only to Bellmon's expected performance as FEMA's agent.

Even if FEMA's representations could have created an "independent" duty, Kerr's reliance on the representations was not reasonable. Kerr admits that his conversation with the FEMA representative did not occur until the summer of 1995. J.A. at 144, 147. Because Kerr received the letter from FEMA and conversed with the FEMA representative well after the sixty-day filing deadline had passed, Kerr could not have reasonably relied upon this information in failing to submit his claim. Furthermore, Kerr's insurance policy stated:

> The insurance adjuster whom we hire to investigate your claim <u>may</u> furnish you with a proof of loss form, and she or he <u>may</u> help you to complete it. <u>However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.</u>

Bellmon App. at 27 (emphasis added). Therefore, FEMA advised Kerr that he was ultimately responsible for completing and filing the required information. When Nemecheck failed to respond to Kerr's letters and phone calls, Kerr should have known not to further rely on Nemecheck to file his claim.

-6-

Throughout his course of dealings with Kerr, Nemecheck conducted only activities which related to his duty as FEMA's adjuster. Because Kerr has not established that Bellmon undertook a separate duty to Kerr, he cannot claim that an independent tort arose which would cause Bellmon to be liable for Kerr's economic harm. See Ranni, 742 S.W.2d at 139. Any cause of action Kerr has with regard to Bellmon's alleged negligence must be brought against FEMA, as Bellmon's principal. See 4 Lee R. Russ and Thomas F. Segalla, Couch on Insurance § 48:63, at 48-93 (3d ed. 1995).

## III. CONCLUSION

Because the district court correctly concluded that Bellmon did not undertake a separate duty to Kerr and therefore could not have committed an independent tort, we affirm the district court's grant of summary judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT